**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 13 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARIA LEDEZMA,

Plaintiff - Appellant,

v.

OPTUM SERVICES, INC.,

Defendant - Appellee.

No. 25-684

D.C. No.
3:23-cv-06691-VC

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted October 23, 2025
Submission Vacated March 3, 2026
Resubmitted August 13, 2026
San Francisco, California

Before: MURGUIA, Chief Judge, and OWENS and BUMATAY, Circuit Judges.
Dissent by Judge BUMATAY.

Maria Ledezma appeals from the district court's grant of summary judgment

in favor of Optum Services, Inc. on her religious accommodation claim under the

California Fair Employment and Housing Act (FEHA).  We have jurisdiction

under 28 U.S.C. § 1291.  As the parties are familiar with the facts, we do not

recount them here.  We affirm.

---

   *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

To establish a prima facie case of religious discrimination under FEHA, an employee must show that she held a sincere religious belief that conflicted with an employment requirement, that she informed her employer of both the belief and the conflict, and that she was discharged or faced some other negative employment consequence because she could not fulfill the job requirement. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004).

Ledezma contends that her objection to Optum's Covid-19 vaccination requirement was based on a sincere religious belief. Yet under our recent precedent, her belief does not qualify as religious. In *Detwiler v. Mid-Columbia Medical Center*, we held that "a plaintiff seeking a religious exemption must plead a sufficient nexus between her religion and the specific belief in conflict with the work requirement," and that "[i]nvocations of broad, religious tenets cannot, on their own, convert a secular preference into a religious conviction." 156 F.4th 886, 895 (9th Cir. 2025). The plaintiff in *Detwiler* objected to Covid-19 testing on the grounds that her body was a temple of the Holy Spirit and that she had determined, through prayer and the guidance of the Holy Spirit, that she should not submit to testing with materials she believed were carcinogenic. *Id*. at 891. We concluded that while her general belief that her body is a temple might be religious, her specific objection to testing rested on a "personal[] medical judgment" about harm. *Id*. at 896. We held that "her secular judgment offer[ed] the sole basis of her

objection" and that she therefore failed to establish a religious belief as a matter of law. *Id.* at 895.

Ledezma's stated belief is materially identical to the one at issue in *Detwiler*. Like the plaintiff in *Detwiler*, Ledezma asserts that her body is a temple of the Holy Spirit and she must avoid introducing harmful substances into it. Like the plaintiff in *Detwiler*, Ledezma asserts a specific objection to the vaccine that turns on her personal determination that the vaccine would be harmful to her body. She testified that she interprets Scripture to mean that "[y]ou have autonomy over your body[,] and you are to decide what's good for you and what's not for you." She explained that her objection was rooted in her longstanding practice of holistic healthcare and her preference for avoiding "allopathic treatments or medications." Further, she admitted that her refusal of the Covid-19 vaccine was simply a continuation of her personal practice of declining vaccinations, as she had done for years.

Under *Detwiler*, this is not a religious belief, but a secular one. Ledezma's objection is grounded in personal health preferences and a self-directed judgment about what substances are harmful. This is precisely the kind of "blanket privilege" we rejected in *Detwiler*. *Id*. at 897 (citation omitted). Invoking a broad principle that sounds in religious terms—that her body is a temple—does not transform her personal health judgment into a religious mandate.

25-684

Ledezma attempts to distinguish her case from *Detwiler* on the ground that her belief was derived from specific Biblical passages, whereas the plaintiff in *Detwiler* relied primarily on personal prayer and guidance from the Holy Spirit. *Id*. at 891. At oral argument, Ledezma's counsel contended that Ledezma's claim should survive because her beliefs, rooted in Biblical text, were "much more specific" and thus more religious than the beliefs at issue in *Detwiler*, which were derived from prayer.

We reject this distinction. First, the plaintiff in *Detwiler* invoked Corinthians as part of her claim. *Id*. at 892. Further, to the extent that Ledezma's objection invoked more Biblical text, the source of the religious conviction cannot determine whether the belief itself is religious in nature—regardless of whether that belief is communicated through prayer, through the interpretation of sacred text, or through some other spiritual experience. To hold otherwise would require us to evaluate the validity or authenticity of different religious sources: to decide, in effect, that some pathways to religious conviction are more legitimate than others. But the Supreme Court has long instructed courts to avoid questioning the sincerity or authenticity of the believer's spiritual experience. *See, e.g., United States v. Ballard*, 322 U.S. 78, 86 (1944) ("Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to

4                                            25-684

others."). To draw a distinction between a belief arising from prayer and an identical belief arising from Biblical interpretation would require us to engage in such an inquiry.

The relevant question is not *how* the believer arrived at her conviction, but rather *what* the conviction is. *See Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023); *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences."). In both *Detwiler* and this case, the plaintiffs articulated a general religious belief—that the body is a temple—but applied that belief through personal, secular judgments about harm. In *Detwiler*, the plaintiff's secular judgment concerned the carcinogenic properties of testing materials. 156 F.4th at 890–91. Here, Ledezma's secular judgment concerns the potential harmfulness of vaccines and her preference for holistic medicine. The pathway by which each plaintiff connected the general principle to the specific objection, whether through prayer or through scriptural interpretation, does not alter the secular character of the objection itself.

Ledezma's reliance on scriptural citation, without more, does not establish that her objection is religious. As we held in *Detwiler*, "it takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious." *Id*. at 897 (internal citations and quotation marks omitted).

25-684

"Invocation of prayer, without more, is . . . insufficient to elevate personal medical judgments to the level of religious significance." *Id.* The same is true of invocations of Scripture. To hold otherwise would allow employees to insulate any personal preference from workplace requirements merely by making broad references to religious texts or principles.

Ledezma's objection to the Covid-19 vaccine, though sincerely held, is not religious in nature. Therefore, she cannot establish a prima facie case of religious discrimination. We need not reach the questions of whether she demonstrated an actual conflict with the vaccination requirement or whether she adequately communicated her beliefs to Optum. The district court correctly granted summary judgment to Optum.

**AFFIRMED.**

*Ledezma v. Optum Services*, 25-684
BUMATAY, Circuit Judge, dissenting:

Maria Ledezma, a sincere and practicing Catholic, requested a religious exemption from her employer, Optum Services, due to her "deeply held religious beliefs pursuant to [her] reliance on teachings in the Holy Bible." Citing multiple Biblical verses, she explained that her "study and understanding of the Bible" and "the true God," direct all her "personal convictions" and command her to follow her conscience. Her religious duty impelled her to "search the Scripture myself" and "to seek personal guidance from the Holy Spirit." Her religion didn't just instruct her to "take good care of" the body as "the Temple of the Holy Spirit"—it commanded her "not [to] introduce something into it that could potentially harm it" and keep it clean of "filth[y]" influences. And her reading of the Psalms prohibited her from taking the COVID-19 vaccine because it "manipulat[ed] genetic operations" and "alter[ed] what God made."

At her deposition, Ledezma reiterated her religious objection to taking the vaccine. She explained that "the scriptures" and her "church" taught "self-autonomy, bodily autonomy" so that each person can "take care of your temple to the best of your ability"—and affirmed each person's duty "to decide what's good for you and what's for you." For her, this made the need "to take care of your body . . . sacred" and prevented her from using "any allopathic treatments or medications." Thus, her practice, going back "more than ten years," of not

"expos[ing] [her] body to any foreign things"—including hosts of medical treatments other than the COVID-19 vaccine—is plausibly religious and comports with the explanations she gave on her exemption form. She introduced evidence plausibly suggesting that Scripture commands her to make her own judgments regarding what to put into her body as a matter of morality and religion as part of her broader religious obligation to keep her temple clean.

In concluding otherwise, the majority extends this court's flawed conclusion in *Detwiler v. Mid-Columbia Medical Center*, 156 F.4th 886 (9th Cir. 2025), ignores the substance of Ledezma's claims, and disregards the proper summary judgment standard. The majority asserts that Ledezma's claim is "materially identical to the one at issue in *Detwiler*" because it centers around her belief that the body is the temple of the holy spirit—and dismisses the remainder of her assertions as mere secular judgment. Maj. at 3. And it points to Ledezma's "longstanding practice of holistic healthcare" and her admission that "her refusal of the Covid-19 vaccine was simply a continuation of her personal practice of declining vaccinations" as evidence that her claim is fundamentally secular. *Id.* But its construction of Ledezma's claims ignores the religious basis for her judgments of harm, that she considers herself religiously compelled not to anything that *could* cause harm into her body, and that she must avoid any medications that put her in the position of God. The majority also doesn't address Ledezma's specific claim that the COVID vaccine works as

2

"gene therapy," which she believes "alters what God made (literally assuming the position of God)." And its construction of her statements at deposition ignores the plausible interpretation of her claims as religious in nature. This violates our obligation at summary judgment: to draw all reasonable inferences in the light most favorable to Ledezma. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (simplified). Applying the standard correctly, I would hold that Ledezma has "plead[ed] a sufficient nexus between her religion and the specific belief in conflict with the work requirement," and allow her California Fair Employment and Housing Act ("FEHA") claim to proceed to trial.[1] *Detwiler*, 156 F.4th at 895.

There is a more fundamental problem here. At bottom, the majority's errors stem from our misunderstanding in *Detwiler* of how courts are supposed to treat religion. Simply, "'[w]hat is religion?' just isn't a question that [courts] are particularly well-suited to answer." *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1353–54 (11th Cir.), *cert. denied,* 145 S. Ct. 161 (2024) (Newsom, J., concurring). Our "charter of government [] envisaged the widest possible toleration of conflicting views": in it, "Man's relation to his God [is] no concern of the state." *United States v. Ballard*, 322 U.S. 78, 87 (1944). And "it

---

[1] Religious discrimination claims are analyzed identically under FEHA and Title VII. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 n.4 (9th Cir. 2001); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).

3

is no business of courts to say that what is a religious practice or activity for [some] is not religion[.]" *See Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953). In particular, Title VII defines religion expansively. Under Title VII, religion includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000(e)j. And it is axiomatic that "[t]he role of the courts in assessing a plaintiff's religious beliefs is limited to determining 'whether the beliefs professed by the [plaintiff] are sincerely held and whether they are, in [her] own scheme of things, religious.'" *Brown v. Alaska Airlines, Inc.*, 179 F.4th 707, 720–21 (9th Cir. 2026) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)). So Title VII includes more than "practices specifically mandated by an employee's religion," *id.* (simplified), including "religious belief[s] . . . not reflected in a biblical passage or scripture," *id.* (simplified), and beliefs that "could be regarded as non-religious human values," *id.* (simplified).

This deferential approach is confirmed by how the framers understood religious belief. At the founding, religion was thought to reflect the individual's duty to God" and to entail "obligations . . . transcend[ing] the individual." Michael W. McConnell, 103 Harv. L. Rev. 1409, 1497–98 (1990). As such, religion was inherently "outside the ken of government" and thus beyond its lawful coercion. *Id.* at 1499. And because it was based on faith rather than "knowledge" or "certainty," religion wasn't considered "capable of demonstration." *Id.* at 1498–99. So the State

4

had no basis to determine the validity of religious claims. *Id.* Any such endeavor by civil authorities, in James Madison's words, would be "an arrogant pretension." *Id.* at 1498 (simplified). So what we do in *Detwiler*, and repeat here—telling plaintiffs that their objections to work requirements aren't religious because their religion doesn't actually conflict with them—is anathema to longstanding practice and our understanding of religion at the founding.

Today, the majority extends our precedent in *Detwiler* and reads specific religious beliefs—not just the invocation of prayer—out of FEHA. Fortunately, though, this won't affect our interpretation of Title VII . FEHA is a California state statute and Title VII is a federal statute. While state courts have chosen to model their interpretation of FEHA, a California state statute, off our interpretation of Title VII, *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1172 (9th Cir. 2001), our interpretation of FEHA would not control how we interpret Title VII going forward. Doing so would violate basic supremacy principles that provide that "the Laws of the United States . . . shall be the supreme Law of the Land[.]" U.S. Const. art. VI cl. 2.

I respectfully dissent.

5